UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20025-CR-BLOOM

UNITED STATES OF AMERICA

v.

CHUN KU,

_____Defendant. /

## JOINT FACTUAL STATEMENT

If this matter were to proceed to trial, the United States of America and Defendant Chun Ku agree that by photographs, documentary evidence, the testimony of witnesses and the confession of Defendant, the United States would establish the following beyond a reasonable doubt:

1. The Lacey Act makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of any wildlife, including reptiles and any part, product, egg, or offspring thereof, which has been, or is intended to be, imported, exported, transported, sold, purchased, or received from any foreign country; or transported in interstate or foreign commerce. 16 U.S.C. § 3372(d)(1) and (2).

2. In order to protect certain species against over-exploitation, the United States became a signatory to an international treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES"). Appendix II of CITES includes wildlife species that although not necessarily threatened with extinction now, may become so unless trade in specimens of such species is strictly regulated. CITES, Art. II at ¶ 2.

3. Ball pythons (*python regius*), boa constrictors (*boa constrictor imperator*), Sumatra short-tailed pythons (*python curtus*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*) are wildlife as defined by the Lacey Act, 16 U.S.C. § 3371(a) and protected under Appendix II of CITES.

4. Before exporting a specimen of any animal protected under Appendix II of CITES from the United States, a valid CITES export permit must be obtained. CITES, Art. IV at ¶ 2; 50 C.F.R. § 23.20(c). A separate original or a true copy of a CITES document must be issued before the export occurs and the document must accompany each shipment. 50 C.F.R. § 23.26(b).

5. In order to streamline the *exportation* of captive bred reptiles, the United States Fish and Wildlife Service ("USFWS") created the CITES "Master File" permitting program. Master File permits allow reptile breeders to obtain multiple partially completed CITES export documents at one time, thus eliminating the need to individually apply for documentation for each single export. 50 C.F.R. §§ 13.11 and 23.51. The Master File, and its related CITES permits, are only applicable to specimens bred in captivity at the specific facility identified by the breeder in the application filed with USFWS and reflected in the Master Permit itself.

6. Breeders who hold a "Master File" permit are not allowed to export CITES protected reptiles (snakes, turtles, geckos, etc.) captured in the wild. 50 C.F.R. §§ 13.21 and 23.54; *see also* USFWS Form 3-200-85.

7. Reptile breeders must submit a CITES Form 3-201A (the CITES Permit) to the USFWS with each reptile shipment they intend to export. By submission of this form, the reptile breeder certifies that all reptiles covered by the permit were bred and hatched from parental stock maintained at their specific facility. 50 C.F.R. § 23.26.

8. All exports of wildlife must be accompanied by a USFWS Form 3-177, a Declaration for Importation or Exportation of Fish or Wildlife, listing among other things, the species and applicable CITES permit numbers. 50 C.F.R. § 14.63.

9. The exporter employing a Master File permit is responsible for ensuring that all invoices, export forms and CITES declarations are true and correct since the wildlife must originate from his parental stock, located at his facility.

10. **CHUN KU** is a resident of Miami, Florida, who owns and operates a business known as Dynasty Reptiles, located in Miami, Florida. Through his business, **KU** breeds, stores, receives and sells reptiles. **KU** currently holds "Master File" CITES permit, No. 203001 (Master File) which is valid until July 12, 2023. **KU** d/b/a Dynasty Reptiles has been a CITES Master File Permit holder from 2008 to the present. Prior to issuance of a CITES Master File **KU** was required to submit, to the USFWS, photographs of his facility, documentation as to where his parental stock came from, estimated production of specimens, export of specimens, and normal mortality rates for the facility, **KU** knows that he is only allowed to breed certain reptiles from his certified parental stock (bred in captivity) for commercialization/sale and export pursuant to his Master File Permit.

11. On July 13, 2020, **KU**'s Master File permit was renewed, allowing him to export specific captive bred species reared from his facility in Miami, Florida. The renewal letter from the USFWS International Affairs Department specifically states **KU**'s facility, under CITES, may export <u>bred-in-captivity specimens</u> of ball python (*Python regius*), boa constrictor (*Boa constrictor imperator*), Sumatra short-tailed python (*Python curtus*), common iguana (*Iguana iguana*), argentine tegu (*Salvator rufescens*), and common tegu (*Salvator merianae*) hatchlings produced at facilities identified in the permit application for the purpose of commercial trade. Furthermore,

the letter specifically states **KU** is the only one authorized to export under this Master File Permit, is only authorized to export bred-in-captivity specimens produced at the facility identified in the permit application, and the permits issued under the Master File may not be given to, used by or shared with anyone else. **KU** knows that he is only authorized to export bred-in-captivity pythons as long as they are bred in his facilities. **KU** also knows that he not authorized to export pythons received from other sources.

12. Co-conspirator Daisuke Miyauchi was a resident of Yokohama, Japan, who owned and operated a business known as Maniac Reptiles. Through his business, Miyauchi sold, among other reptiles, ball pythons (*python regius*), boa constrictors (*boa constrictor imperator*), Sumatra short-tailed pythons (*python curtus*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*).

13. Miyauchi secured a significant portion of his reptile inventory from individuals and businesses in the United States. Miyauchi would travel to the United States, attend reptile shows, send the reptiles to the business/home of an Unindicted Co-conspirator 1 in Davie, Florida, and then, with the help of **KU**, smuggle the CITES II species out of the country by causing the filing of false declarations for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A), certifying that the reptiles covered by the permit were bred and hatched from parental stock maintained at **KU**'s business, when in truth and in fact, as Miyauchi and **KU** then knew, said wildlife was not captive-bred in **KU**'s facility.

14. Between July 30, 2013, and August 27, 2021, **KU** exported or attempted to export at least 45 shipments of wildlife to Miyauchi under his Master File Permit. Those shipments included, among other wildlife, CITES II reptiles that had not been bred and hatched from parental

stock maintained at **KU**'s business. In return for the use of his Master File Permit, **KU** demanded payment of $2,000 or the purchase of $7,500 worth of wildlife from his business.

15. Unindicted Co-conspirator 2 is a resident of Mong Kok, Hong Kong, and owns and operates a business through which he/she sold, among other reptiles, ball pythons (*python regius*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*).

16. Unindicted Co-conspirator 2 secured a significant portion of his reptile inventory from individuals and businesses in the United States. Prior to 2019, Unindicted Co-conspirator 2 would to travel to the United States to attend reptile shows and purchase reptiles, and would work with **KU** to smuggle the reptiles out of the country. Since 2019, Unindicted Co-conspirator 2 has relied on **KU** to, among other things: (1) receive, pack, and export CITES II species that he/she purchases from others in the United States; and (2) smuggle the CITES II species out of the country by causing the filing of false declarations for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A), certifying that the reptiles covered by the permit were bred and hatched from parental stock maintained at **KU**'s business, when in truth and in fact, as Unindicted Co-conspirator 2 and **KU** then knew, said wildlife was not captive-bred at **KU**'s facility.

17. Between December 1, 2017, and August 11, 2021, **KU** exported or attempted to export at least 20 shipments of wildlife to Unindicted Co-conspirator 2 under his Master File Permit. Those shipments included, among other wildlife, CITES II reptiles that had not been bred and hatched from parental stock maintained at **KU**'s business. In return for the use of **KU**'s Master File permit, Unindicted Co-conspirator 2 agreed to either pay **KU** or purchase additional wildlife from **KU**'s business.

18. The manner and means by which **KU** sought to accomplish the object and purpose of the conspiracy, are set forth in more detail in the Criminal Information and incorporated herein by reference.

19. The overt acts committed in the Southern District of Florida in furtherance of the conspiracy are set forth in detail in the Criminal Information and incorporated herein by reference. Those overt acts include, among others, the following:

    a. On or about September 13, 2019, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least eleven Argentine tegus (*salvator rufescens*)) were bred and hatched from parental stock maintained at **KU**'s business.

    b. On or about October 30, 2020, **KU** and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least five Argentine tegus (*salvator rufescens*), and ten Common tegus (*salvator meriane*)) were bred and hatched from parental stock maintained at **KU**'s business.

    c. On or about November 20, 2020, **KU** and Miyauchi caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least twenty Sumatra short-tailed python (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business.

    d. On or about April 30, 2021, **KU** and Miyauchi caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be

filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, one hundred seventeen ball pythons (*python regius*), and ten Sumatra short-tailed pythons (*python curtus*)) were bred and hatched from parental stock maintained at **KU**'s business.

   e. On or about April 30, 2021, Miyauchi concealed three Australian knob-tailed geckos within the boxes containing the reptiles described in paragraph (b) above and did not declare the geckos as required by law in any of the export paperwork.

   f. On or about July 15, 2021, KU and Unindicted Co-conspirator 2 caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least nine Common tegus (*salvator meriane*)) were bred and hatched from parental stock maintained at **KU**'s business.

   g. On or about August 27, 2021, **KU** and Miyauchi caused to be submitted a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) as the foreign importer to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, at least two hundred ball pythons (*python regius*)) were bred and hatched from parental stock maintained at **KU**'s business.

20. As to **KU** only, and based upon an average of the retail prices posted on Miyauchi's company's website (excluding the high end retail prices for purposes of a reasonable estimate), the readily provable retail market value for the CITES II protected species involved in the relevant conduct of the counts of conviction was approximately $5,134,167.

### Conclusion

Based upon the foregoing, the United States and the Defendant respectfully submit that a reasonable jury would find that **KU** is guilty beyond a reasonable doubt of:

  (1) knowingly and willfully conspiring with other persons to commit certain offenses against the United States, that is:

   a. to make and submit any false record, account, and label for, and any false identification of any wildlife, including reptiles and any part, product, egg, and offspring thereof, which has been, and is intended to be, exported, in violation of 16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i); and

   b. to fraudulently and knowingly export and send from the United States any merchandise, article, and object contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Section 554;

all in violation of Title 18, United States Code, Section 371; and

  (2) knowingly making and submitting, and causing to be made and submitted, a false record for and false identification of wildlife aid wildlife having been and intended to be exported, all in violation of Title 16, United States Code, Sections 3372(d)(1) and 3373(d)(3)(A)(i) and Title 18, United States Code, Section 2, all as charged in the two-counts of the Information in this case.

           Respectfully submitted,

           ANTONIO JUAN GONZALEZ
           UNITED STATES ATTORNEY

Date: 3/31/22  By: _____
           Thomas A. Watts-FitzGerald
           Assistant United States Attorney

           TODD KIM
           ASSISTANT ATTORNEY GENERAL
           Environment and Natural Resources Division

Date: 3/31/22  By: _____
           Banumathi Rangarajan
           Trial Attorney
           Environmental Crimes Section

**Reviewed and agreed to:**

Date: 2/17/22          By: _____
                            JEFFREY MARCUS
                            ATTORNEY FOR DEFENDANT


Date: 2/17/22          By: _____
                            KATE MEYERS
                            ATTORNEY FOR DEFENDANT


Date: 2/17/22          By: _____
                            CHUN KU
                            DEFENDANT